UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS QUIROZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANTHONY ENNMOH, M.D., et al.,<br><br>　　　　Defendants. | Case No.: 1:11-cv-01449-BAM PC<br><br>ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY THE COURT OF WILLINGNESSS TO PROCEED ON COGNIZABLE CLAIMS<br><br>(ECF No. 7) |

**Screening Order**

**I.     Screening Requirement**

Plaintiff Carlos Quiroz ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action on August 29, 2011. Currently pending before this Court is Plaintiff's first amended complaint filed on September 29, 2011.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

While prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Allegations of the First Amended Complaint**

Plaintiff brings this action against the following defendants in their individual and official capacities:  (1) Anthony Ennemoh, Chief Medical Officer, California Substance Abuse Treatment Facility ("CSATF"); (2) Olga Beregovskaya, M.D., physician and surgeon at CSATF; (3) Dr. Rejenda Dwivide, M.D., a physician and surgeon at CSATF; and (4) Defendant Timothy Byers, P.A., a physician's assistant at CSATF.

Plaintiff alleges as follows:  On March 9, 2007, Plaintiff's 602 appeal request that he be seen by a specialist at U.C. Davis was denied.  The denial noted that Defendant Dwivide made no recommendation for Plaintiff to be referred back to U.C. Davis for treatment.  On December 13, 2008, Dr. Salmi, who is not a defendant in this action, made an "urgent" request that Plaintiff be sent to Dr. Low at U.C. Davis due to Plaintiff's serious medical condition and need for specialized treatment.

On April 23, 2008, Plaintiff filled out a medical request form seeking medical attention because of pain in his kidneys. Three months later, on July 2, 2008, Plaintiff was sent to U.C. Davis and seen by Dr. Low. Dr. Low advised Plaintiff that he could not give an adequate diagnosis or treatment for Plaintiff's kidney stones until a 24-hour urine test was performed. Dr. Low ordered a CT scan.

On October 3, 2008, Plaintiff was again seen by Dr. Low at U.C. Davis. Dr. Low told Plaintiff that he still could do nothing to treat Plaintiff until the 24-hour urine test was performed. On December 14, 2008, Plaintiff again saw Dr. Low. As the 24-hour urine test that he had ordered still had not been done, Dr. Low told Plaintiff that he could do nothing to start the treatment until the testing was performed. Dr. Low requested that Plaintiff be brought back to see him for follow-up in four months.

On January 1, 2009, Plaintiff was seen by Dr. Aaron Rotman, who referred Plaintiff to Dr. Low for appropriate specialist treatment and noted that it was very important that Plaintiff be given the 24-hour urine test.

On June 17, 2009, Plaintiff saw Dr. Low. As the 24-hour urine test still had not been performed, Dr. Low advised that he could do nothing to treat Plaintiff. Dr. Low wrote a letter to medical staff at CSATF stating that he has had trouble counseling Plaintiff because of his inability to get CDCR medical staff to perform the needed 24-hour urine test that he had repeatedly requested. Dr. Low again requested that a 24-hour urine test be performed, so that he could properly diagnose, treat and medicate Plaintiff to reduce the amount of kidney stones forming in Plaintiff's kidneys and properly treat Plaintiff's renal deterioration. Dr. Low asked that Plaintiff be seen by him again in November 2009.

On August 16, 2009, Plaintiff was evaluated by Defendant Beregovskaya. Defendant Beregovskaya told Plaintiff that it was medically unnecessary for Plaintiff to be referred back to a urology specialist. After reading the paperwork from Dr. Low, Defendant Beregovskaya advised Plaintiff that his condition could not be treated because it had no cure. Plaintiff informed Dr. Beregovskaya about the severe and excruciating pain that he had been experiencing from passing

1  kidney stones and request that he be given pain medication. Defendant Beregovskaya refused to
2  prescribe Plaintiff any pain medication.
3       On September 21, 2009, Defendant Ennemoh denied Plaintiff's appeal request to be seen by a
4  urology specialist. On January 6, 2010, Prison Health Care Services denied Plaintiff's request to be
5  seen by Dr. Low at U.C. Davis.
6       On April 5, 2010, Prison Health Care services denied Plaintiff's appeal despite Plaintiff's
7  statement that Dr. Low was unable to treat him because of CDCR medical staff's refusal to give
8  Plaintiff the 24-hour urine test so that treatment could be started to lessen the amount of kidney stones
9  that Plaintiff was producing. Plaintiff admits that his condition may not be incurable, but alleges that
10 it may be treatable and it is common knowledge that kidney stones can be very painful. Thereafter,
11 on April 8, 2010, Prison Health Care Services responded to another appeal that Plaintiff had filed.
12 According to Prison Health Care Services, the 24-hour urine tests were done and had been sent to Dr.
13 Low as requested.
14      On July 5, 2010, Plaintiff was seen by Defendant Dwivide. Defendant Dwivide told Plaintiff
15 that there was nothing he could do to treat Plaintiff except prescribe antibiotics for infection. Plaintiff
16 told Defendant Dwivide that he had been suffering severe and excruciating pain from the kidney
17 stones and wanted to be prescribed effective pain medication, such as morphine or another narcotic
18 medication. Defendant Dwivide told Plaintiff that he could not prescribe narcotic pain killers because
19 Chief Medical Officer, Defendant Ennemoh, had to approve all such requests.
20      On June 17, 2010, Plaintiff was again seen by Defendant Dwivide. Defendant Dwivide told
21 Plaintiff that the only treatment that he would give to Plaintiff was to help break up some of the kidney
22 stones so that they would pass his system easier. Plaintiff explained to Defendant Dwivide that Dr.
23 Low had repeatedly requested that a 24-hour urine test be performed on Plaintiff so that his condition
24 could be properly diagnosed and treated. Defendant Dwivide told Plaintiff that he did not feel that Dr.
25 Low could do anything to help Plaintiff, but promised to put a note in Plaintiff's medical file that
26 Plaintiff wanted to be seen by Dr. Low.
27      On August 2, 2010, Plaintiff was seen by Defendant Beregovskaya. Defendant Beregovskaya
28 advised Plaintiff that she would not refer Plaintiff back to Dr. Low because Plaintiff had been seen

four times previously and Dr. Low had never recommended any treatment plan. Plaintiff explained that Dr. Low needed the results from the 24-hour urine test, so that he could properly diagnose and treat Plaintiff. Plaintiff reported that the 24-hour urine test had been done, but had never been forwarded to Dr. Low. Dr. Low had stated that he could offer no effective diagnosis and treatment until he had the results of the test. Plaintiff also reported to Defendant Beregovskaya about the terrible pain he experienced from the kidney stones and to look in his medical files so that she could see that Plaintiff had over 100 stones in each kidney. Plaintiff then asked Defendant Beregovskaya to prescribe effective pain medication to help alleviate the severe and excruciating pain. Defendant Beregovskaya refused to prescribe the needed pain medication. Plaintiff alleges that he suffers severe pain every day from the kidney stones that his body produces.

On August 6, 2010, Plaintiff was seen by Dr. Julius Metts. Plaintiff told Dr. Metts that Defendant Dwivide put a note in Plaintiff's medical file recommending that Plaintiff be seen again by Dr. Low. Dr. Metts told Plaintiff that he did not feel that a urology specialist could help Plaintiff. Plaintiff believes that neither Dr. Metts nor Defendant Beregovskaya have specialized training in treating kidneys like Dr. Low at U.C. Davis.

On or about December 29, 2010, at approximately 12:00 p.m., Plaintiff went to the CSATF medical clinic because he was experiencing severe pain in his back due to kidney stones. A nurse informed Plaintiff that he would be seen by Defendant Byers, a physician assistant. Approximately fifteen minutes later, the nurse told Plaintiff that Defendant Byers had been advised that Plaintiff was suffering extreme pain, but that Plaintiff would have to wait until Defendant Byers finished the burrito he was eating for lunch. Approximately ten minutes later, Plaintiff was seen by Defendant Byers. Plaintiff explained the symptoms he was experiencing and Defendant Byers told Plaintiff that his problem was not complicated and he would give Plaintiff morphine for the pain and antibiotics. Plaintiff attempted to explain that morphine does not work for his pain. He also explained that every time he experienced these symptoms and was sent to the prison hospital where he received pain medication and antibiotics through an IV drip, he had to return approximately three hours later. Plaintiff also informed Defendant Byers that the last time he was given morphine it caused an adverse reaction. Defendant Byers accused Plaintiff of lying to go to the C.T.C. or the hospital and that

1  Plaintiff was faking his pain.  Plaintiff was suffering intense pain and therefore agreed to take the
2  morphine and risk another adverse reaction.  Plaintiff then returned to his housing unit.
3  Approximately ten minutes later, Plaintiff started vomiting.  After vomiting three times, the pain
4  returned.
5     At approximately 2:00 p.m., Plaintiff returned to the Facility "E" Medical Clinic seeking
6  treatment because the pain was so severe.  Defendant Byers refused to do anything more to help
7  Plaintiff and refused to send him to C.T.C. to be seen by a doctor.  At that time, Licensed Vocational
8  Nurse Villareal ordered Plaintiff to exit the Facility "E" Medical Clinic and return to his housing unit.
9     At approximately 4:45 p.m. on the same day, Plaintiff went man down in order to get medical
10 attention.  The Facility "E" Building 3 housing officer came to Plaintiff's cell and asked Plaintiff
11 where it hurt.  Plaintiff told the officer and the officer immediately activated his emergency alarm to
12 summon medical staff.  When medical staff arrived, they immediately had Plaintiff brought to the
13 C.T.C.  The doctor on duty determined that Plaintiff needed to be transported immediately to San
14 Joaquin Hospital.  Upon arrival at the hospital, the treating physician determined that Plaintiff had a
15 severe infection and put Plaintiff on an I.V. drip of pain medication and antibiotics.  While at the
16 hospital for three days, Plaintiff passed three kidney stones.
17     Plaintiff contends that he has not been provided medical treatment for kidney stone problems
18 and has not been given adequate pain medications to help alleviate the excruciating pain that he suffers
19 each day from passing kidney stones.  Plaintiff alleges that because prison medical staff members have
20 refused to give him the 24 hour urine test and forward the test results, Dr. Low has been unable to
21 diagnose and treat Plaintiff's kidney condition.  Plaintiff also alleges that prison doctors have refused
22 to put him on pharmacologic therapy to reduce the amount of kidney stones that his body produces
23 and to help prevent further renal deterioration, which causes Plaintiff unnecessarily to suffer
24 excruciating pain each and every day.
25     Plaintiff asserts causes of action for deliberate indifference to a serious medical condition in
26 violation of the Eighth Amendment against Defendants Ennemoh, Beregovskaya, Dwivide and Byers.
27 Plaintiff also asserts a cause of action for medical negligence in violation of state law against
28 Defendant Byers.  Plaintiff seeks compensatory and punitive damages, along with declaratory relief.

6

### III. Discussion

#### A. Official Capacity and Eleventh Amendment

Plaintiff alleges that Defendants Ennemoh, Beregovskaya, Dwivide and Byers are liable for violating his constitutional rights while acting in both their official and individual capacities.

The Eleventh Amendment prohibits suits for monetary damages against a State, its agencies, and state officials acting in their official capacities. Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). A suit against a state official in his official capacity equates to a suit against the state employing that official, Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), effectively barring a plaintiff from bringing suit on these grounds. However, the Eleventh Amendment does not bar a suit for monetary damages against a state official sued in his individual capacity. Id.

Plaintiff's complaint does not name the State of California or any of its agencies as defendants. Instead, it alleges that Defendants are employed by the California Department of Corrections and Rehabilitation. Thus, Plaintiff's claims against Defendants in their official capacity are tantamount to bringing suit against the State. As a result, Plaintiff's claims against these Defendants in their official capacities cannot stand and are barred by the Eleventh Amendment.

#### B. Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.' " Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) " 'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and [ ] harm caused by the indifference." Jett, 439 F.3d at 1096. In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants

"[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (citing Estelle, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990).

At the pleading stage, Plaintiff states a cognizable claim for relief against Defendants Ennemoh, Beregovskaya, Dwivide and Byers for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

### C. State Law Claims

Plaintiff asserts a claim for medical negligence or medical malpractice against Defendant Byers. The California Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2.  Presentation of a written claim, and action on or rejection of that claim, are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 13 Cal.Rptr.3d 534, 90 P.3d 116, 119 (Cal. 2004); Shirk v. Vista Unified School District, 42 Cal.4th 201, 209, 64 Cal.Rptr.3d 210, 164 P.3d 630 (2007). To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act. Cal. Gov't Code § 950.6; Bodde, 13 Cal.Rptr.3d 534, 90 P.3d at 123.

Plaintiff has not adequately alleged compliance with the California Tort Claims Act.

///

### D. Declaratory Relief

"A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

In the event this action proceeds to trial and a jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that Defendants violated Plaintiff's rights would be unnecessary. Plaintiff's request for declaratory relief is moot.

### IV. Conclusion and Order

Plaintiff states cognizable claims for relief against Defendants Ennemoh, Beregovskaya, Dwivide and Byers for deliberate indifference to a serious medical need in violation of the Eighth Amendment. Plaintiff does not state any other claims for relief.

The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against the claims found cognizable against Defendants Ennemoh, Beregovskaya, Dwivide and Byers, Plaintiff may so notify the Court in writing. Plaintiff will then be provided with the appropriate number of summonses and USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process on the defendants against whom Plaintiff chooses to proceed against in this action.

Alternatively, if Plaintiff elects to amend his complaint, then his amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what the named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted). Plaintiff also may not change the nature of this suit

by adding new, unrelated claims in his amended complaint. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 927 (9th Cir. 2012) (en banc). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff must either:

 a. File an amended complaint curing the deficiencies identified by the Court in this order; or

 b. Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only against Defendants Ennemoh, Beregovskaya, Dwivide and Byers for deliberate indifference to serious medical need in violation of the Eighth Amendment; and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: **May 21, 2013**          /s/ *Barbara A. McAuliffe*
                                   UNITED STATES MAGISTRATE JUDGE